Concepcion SAUCEDA,
et al., Appellants,

v.

Gilbert KERLIN, Individually, Gilbert Kerlin, Trustee, Windward Oil & Gas Corporation, and P.I. Corporation, Appellees.

No. 13–01–00062–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

June 9, 2005.

Rehearing Overruled July 7, 2005.

See also 138 S.W.2d 206, affirmed 161 S.W.2d 489; 190 S.W.2d 71; 182 F.2d 750.

Britton D. Monts, Dallas, Robert F. Johnson, III, Tom C. McCall, McCall &

Ritchie, Hector H. Cardenas, Jr., Law Office Hector H. Cardenas, Jr., Austin, for appellants.

Frank Costilla, Horacio L. Barrera, Martinez & Barrera, Brownsville, M. Steve Smith, Houston, Russell H. McMains, Law Office of Russell H. McMains, Corpus Christi, Brian T. Smith, Steven M. Zager, Brobeck, Phileger & Harrison, Austin, Juan Jose Martinez, Olmito, for appellees.

Rebecca Gomez Sexton, McAllen, pro se.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

Appellants, descendants of Juan Jose Balli ("Balli Claimants"), sued appellees, Gilbert Kerlin, individually and as trustee, Windward Oil and Gas Corporation, and P.I. Corporation ("Kerlin Group"), for: (1) breach of contract; (2) breach of fiduciary duty; (3) fraud; and (4) conspiracy to commit fraud and breach of fiduciary duty. The Balli Claimants also asked for a declaratory judgment, an accounting, and the imposition of a constructive trust. *See* Tex.R. Civ. P. 274; *Morales v. Morales*, 98 S.W.3d 343, 346 (Tex.App.-Corpus Christi 2003, pet. denied). After a lengthy jury trial, judgment was rendered in favor of the Balli Claimants. The Balli Claimants' appeal raises two issues and the Kerlin Group's cross-appeal raises twelve issues. We reverse that part of the trial court's judgment denying an equitable accounting and remand that issue to the trial court with instructions to order an equitable accounting. We affirm the remainder of the trial court's judgment.

## I. BACKGROUND

In 1829, the Mexican State of Tamaulipas concluded proceedings to confirm the grant of the area now known as Padre Island to Padre Nicolas Balli and his nephew, Juan Jose Balli. The size of the grant was estimated at approximately 49,913 acres. Padre Nicolas Balli died before the grant was finalized and his interest in Padre island passed by devise to his nieces and nephews, including Juan Jose Balli.

On January 19, 1830, Juan Jose Balli conveyed his interest in Padre Island, which consisted of the northern one-half of the island (the "northern division") and the portion he inherited from Padre Nicolas Balli, to Santiago Morales.

On March 20, 1830, Morales appeared before a judge in the city of Matamoros in the Mexican State of Tamaulipas. Morales asserted that the Padre Island grant was defective and that he did not want to invest in the property until the title to Padre Island was clear. He asked that Juan Jose Balli return the purchase money, with the understanding that the sale could be reinstated if the title was cleared. In his response, Juan Jose Balli denied that the title was defective but said he would return the purchase money if Morales desired. Both men subsequently entered into a rescission agreement.

Despite the existence of this rescission agreement, in 1842 Morales mortgaged the southern half of the property that he had acquired from Juan Jose Balli to Maria de los Dolores. In 1845, Morales also conveyed the remaining interest to Jose Maria Tovar. The heirs of Padre Nicolas Balli conveyed their interests in the southern half of Padre Island (the "southern division") to Nicolas Grisante during the 1840s.

In 1902, the heirs of Nicolas Grisante filed suit for possession of Padre Island in the United States Circuit Court for the Southern District of Texas in Laredo. In 1905, the court rendered a judgment granting possession of Padre Island to a

number of defendant parties, including Pat F. Dunn, Jno. [sic] S. McCampbell, Mrs. H.M. King, Eddie White McCampbell, Oscar W. Staples, Jay Cook, Pauline J. Wells, Eugine R. Raphael, and Mrs. Conrad Menley. See Grisanti v. Am. Trust Co. of New Jersey, No. 18 (C.C.S.D.Tex. Nov. 16, 1905).

### A. *Havre v. Dunn*

In 1923, Lizzie Havre filed a trespass to try title suit against Pat F. Dunn, Sam A. Robertson, and W.E. Callahan. Dunn, Robertson, and Callahan filed a cross-action against approximately 120 other persons for the recovery of title and possession of Padre Island, except for the southernmost 7,500 acres. Many of the cross-defendants were cited by publication, including the heirs of Padre Nicolas Balli and the heirs of Juan Jose Balli. Most of the cross-defendants cited by publication did not personally appear during the proceedings. All of the cross-defendants were represented by a single attorney ad litem, who, acting on behalf of the cross-defendants, told the court that the law and facts were in favor of Robertson and Callahan.

In June 1928, the 103rd District Court of Cameron County rendered a judgment in *Havre v. Dunn. Havre v. Dunn*, No. 12469 (103rd Dist. Ct., Cameron County, June 9, 1928). Havre's claims against Dunn, Robertson, and Callahan were nonsuited. Dunn's claims against the cross-defendants were nonsuited also. The district court's judgment granted title and possession of Padre Island, except for the southernmost 7,500 acres, to Robertson and Callahan. All other parties were denied relief on their respective pleadings.

A petition for bill of review was timely filed by Merrill W. Staples, one of the cross-defendants cited by publication, and Joseph G. Bowen. Robertson and Calla-han jointly filed answers consisting of general demurrer and general denial. Merrill W. Staples was deposed in 1931. No major action was taken in the case until October 24, 1938.

### B. *Kerlin and Associates*

In 1937, Frederic Gilbert, a partner in the law firm of Sherman & Sterling in New York City, was contacted by Elmer Johnson, a business associate. Johnson proposed a business venture in south Texas. Johnson introduced Gilbert to E.R. Fry, J.Q. Henry, A.W. Phillips, and Herman Nami. Fry, Henry, Phillips, and Nami claimed that they had found documents in the archives of Matamoros, rescinding the land sale agreement between Juan Jose Balli and Santiago Morales. Fry, Henry, Phillips, and Nami promoted the documents as evidence that the title of Juan Jose Balli might still confer valid ownership to the northern division of Padre Island.

Gilbert hired F.W. Seabury, an attorney in Brownsville, to research the proposed venture. Seabury expressed reservations regarding the validity of the Juan Jose Balli title. Nevertheless, Gilbert entered into a joint partnership agreement with Phillips, Fry, Nami, and Henry to assert that the rescission agreement was valid and thereafter make claim to Juan Jose Balli's interest in Padre Island.

Gilbert looked to his nephew, Gilbert Kerlin, to manage the venture. Kerlin was a 1936 graduate of Harvard Law School who was working for Gilbert at Sherman and Sterling. In 1938, Gilbert directed Kerlin to travel to Brownsville to purchase Juan Jose Balli's title to Padre Island.

Upon arriving in Brownsville, Kerlin contacted Primitivo Balli, an heir of Juan Jose Balli and patriarch of the Balli family.

Primitivo Balli agreed to assist Kerlin in finding and acquiring all of Juan Jose Balli's interest in Padre Island from the heirs-at-law. Tomas Tijerina, an heir of Juan Jose Balli, assisted by translating for Kerlin. Primitivo Balli's daughter, Librada Balli, worked as a secretary for Kerlin. Kerlin explained to Primitivo and Librada Balli that he was obtaining the deeds to clear title to Padre Island and that each deed would reserve a 1/64 royalty interest in each Balli grantor. Kerlin also made assurances that each Balli grantor would receive something if Kerlin received anything through the deeds.

Soon thereafter, Kerlin, as trustee, obtained from the heirs of Juan Jose Balli (the "Balli Grantors"), twelve general warranty deeds to the land constituting Juan Jose Balli's interest in Padre Island. Only eleven of the deeds were recorded, as one appeared to be a duplicate. Seabury drafted each deed. Each deed contained an oil and gas reservation clause, which contained the following or substantially similar language:

> It being my contention (sic) to convey all of the interest which I have in the here and above (sic) described premises, and each and every part thereof, by reason of my being one of the lawful heirs of said Juan Jose Balli, irrespective of the acreage or quantity thereof, save and except that there is specifically reserved to me a one-sixty-fourth (1/64th) of the royalty of one-eighth (1/8th) of any and all oil and/or gas or other minerals in, on, and under my pro rata interest in the above described premises.

## C. *Re–Opening Havre v. Dunn*

Kerlin and Gilbert decided to pursue other interests in Padre Island that would not be subject to the partnership venture with Fry, Henry, Phillips, and Nami. By the end of 1938, Kerlin had acquired a number of titles to Padre Island, each of which had been cut off by the *Havre v. Dunn* judgment. Kerlin intended to claim ownership of this Padre Island property by asserting the validity of the titles he held. Kerlin and Gilbert sought to accomplish this by attacking and setting aside the judgment in *Havre v. Dunn*.

Gilbert approached the widow of Joseph G. Bowen, one of the cross-defendants in *Havre v. Dunn* who had attempted to obtain a new trial in 1930. Gilbert and Mrs. Bowen agreed that Kerlin would acquire oil, gas, and mineral leases on Padre Island as well as a power of attorney to prosecute, at his own expense, the bill of review previously filed by Staples and Bowen in *Havre v. Dunn*. Seabury was retained to reopen and prosecute the suit.

Seabury represented multiple clients in the *Havre v. Dunn* case, many of whom held conflicting titles to interests on Padre Island. Seabury represented Kerlin, individually and as trustee, Mrs. Bowen, George Warren, individually and as trustee, and the heirs of Juan Jose Balli. In the *Havre v. Dunn* case, Seabury filed an amended motion for new trial, an answer, a cross-action, and an amended cross-action on behalf of (1) the heirs of Juan Jose Balli; (2) Kerlin, individually and as trustee; and (3) George Warren. The heirs of Juan Jose Balli were never told that Seabury had filed a cross-action on their behalf, nor did Seabury ever communicate with the Ballis.

The cross-action alleged in part: "this defendant [the heirs of Juan Jose Balli] owns said premises from and under the sovereignty of the soil and in particular under and by virtue of an original grant thereof made by the State of Tamaulipas, Mexico, in the year 1828, to Nicolas Balli and Juan Jose Balli whose title and rights this defendant now has." The amended cross-action attempted to establish the va-

lidity of the Juan Jose Balli title, as well as the other titles acquired by Kerlin.

On December 30, 1938, the presiding judge granted the amended motion for new trial filed by Seabury in *Havre v. Dunn*. On January 1, 1939, the judge's term expired and a new judge took office. The succeeding judge rescinded the order granting a new trial on the grounds that the motion for new trial had been waived, abandoned, and determined by operation of law prior to the proceedings. On appeal, it was held that the succeeding judge had erred in rescinding the order granting the new trial. *See Staples v. Callahan*, 138 S.W.2d 206, 208 (Tex.Civ.App.-San Antonio 1940), *aff'd, Callahan v. Staples*, 139 Tex. 8, 161 S.W.2d 489 (1942).

### D. *Additional Suits for Padre Island*

In 1940, while the *Havre v. Dunn* case was pending on appeal, the State of Texas filed suit, alleging that all of Padre Island was state property. Under the circumstances, parties with opposing claims of interest to Padre Island organized to form a united defense. These conflicting chains of title, named as defendants in the case, agreed to assert their collective titles against the State. The State of Texas ultimately lost the case at the Texas Supreme Court, and the United States Supreme Court denied certiorari. *State v. Balli*, 144 Tex. 195, 190 S.W.2d 71 (1944), *cert. denied, Texas v. Balli*, 328 U.S. 852, 66 S.Ct. 1341, 90 L.Ed. 1624 (1946).

In 1940, Kerlin filed suit against the King Ranch. Kerlin asserted title to 6,000 acres of land on Padre Island. During the suit, Kerlin relied on the deeds from the Balli Grantors, as well as the rescission agreement between Santiago Morales and Juan Jose Balli. The case was settled, and the King Ranch conveyed a 6,000 acre tract to Kerlin. *See Kerlin v. King*

*Ranch*, No. 18,1987 (103rd Dist. Ct., Cameron County, Texas) (filed Aug. 8, 1941).

During the litigation of *State v. Balli*, a State-conducted survey by J. Stuart Boyles determined that the size of Padre Island had grown to 135,213 acres. In the summer of 1941, the United States sued to condemn 34,884 acres of Padre Island to create a bombing range. The suit named many parties as defendants, including the Balli Grantors. The suit was abated until the decision in *State v. Balli* was resolved on appeal. *See U.S. v. 34,884 Acres*, No C.A. 142 (S.D.Tex.1948), *aff'd* 182 F.2d 750 (5th Cir.1950).

### E. *Settlement Negotiations in Havre v. Dunn*

On February 28, 1940, Kerlin, Gilbert, and Seabury met with opposing parties to discuss a proposed settlement of the *Havre v. Dunn* case. During the meeting Seabury asserted the validity of the deeds from the Balli Grantors and proposed that his "group" should receive forty percent of the entire acreage of Padre Island.

On March 24, 1942, Marcellus G. Eckhardt and Harbert Davenport, attorneys for some of the parties opposing Kerlin, shared correspondence inquiring whether there was a possibility of settling with the Balli Grantors. In other correspondence, Davenport expressed concerns to other counsel that in a new trial the Balli Grantors could claim an interest in Padre Island.

On June 8, 1942, Seabury called Davenport and requested that a settlement conference in *Havre v. Dunn* be held on June 9, 1942. On June 9, 1942, Seabury submitted a written proposal to settle the case. Seabury proposed that 25,542.6 acres of Padre Island be set aside to Kerlin and associated parties. A portion of these 25,542.6 acres was described by Seabury as being:

In Kleberg or Kenedy County, a tract of 7,444 acres lying in the extreme south end of what in the Laredo judgment was called the northern division of Padre Island. Juan Jose Balli owned one-half and one-seventh of the other half of the island, a total of 77,264 acres on the Boyles' survey. He conveyed to Santiago Morales the north half of the island plus one-half league, which on the same figures makes 69,820 acres. The difference, 7,444 acres, is the acreage that was never divested out of Juan Jose Balli on any theory of the case. Gilbert Kerlin and Associates want this to comply with their commitments with the heirs of Juan Jose Balli whose title is now in Gilbert Kerlin, Trustee. . . .

On June 15, 1942, Gilbert wrote Kerlin a letter setting out the terms of Seabury's settlement proposal. As part of the proposed settlement, Gilbert described a 20,000 acre tract formed from various tracts. One of these tracts was described as 7,500 acres "[f]or the Juan Jose interest."

On September 29, 1942, Davenport wrote Seabury that Dunn would agree to settle for the land described in the settlement agreement, plus a one-third mineral interest in the southern portion of the island. Davenport was sure that there was enough acreage to satisfy all the legitimate claims of Seabury's clients because of the island's increase in size that was discovered during *State v. Balli.*

A hearing on the motion for new trial was set in *Havre v. Dunn* for November 9, 1942. Kerlin, who was serving in the army, secured a three-day pass to be present in Brownsville, Texas during that period. On November 9, 1942, a stipulation was filed with the court, stating that all matters in *Havre v. Dunn* had been settled. Pursuant to that stipulation, Kerlin was to receive all interest in and to the minerals on and underlying 1,000 acres out of a portion of Padre Island in Nueces County. Kerlin was also to receive conveyances, assignments, and releases sufficient to vest in Kerlin, individually and as trustee, the fee simple title to 20,000 acres of land out of the southern division of Padre Island.

Also on November 9, 1942, Kerlin attended a meeting with Gilbert and Seabury. At the meeting, Seabury advised abandonment of the Balli claim. Kerlin, individually and in his capacity as trustee, then executed reconveyance deeds to the Balli Grantors. The reconveyance deeds specifically recited that the Balli Grantors were advised of the reconveyance. However, Kerlin never informed the Balli Grantors of the reconveyance deeds, nor were the deeds ever recorded or delivered to the Balli Grantors.

While he was in Brownsville during his three-day pass from the army, Kerlin visited Librada Balli's place of employment. Kerlin told Librada Balli that he was in town to take care of a little business. He did not mention the settlement of *Havre v. Dunn.* In fact, none of the Balli Grantors were informed of the settlement of *Havre v. Dunn* by either Kerlin or Seabury.

After the settlement stipulation was executed, Seabury filed a motion to dismiss the claims asserted in *Havre v. Dunn,* including the Balli cross-action. After November 9, 1942, Gilbert also told the partners in the Balli venture that he had abandoned the Balli claim.

In order to effectuate the settlement in *Havre v. Dunn,* the parties were required to execute cross-conveyance deeds to the respective acreage each party received in the settlement. By letter dated December 12, 1942, Davenport advised Eckhardt that Seabury had agreed to not give the Balli Grantors any recordable instrument that could cast a cloud on the Dunn title. On

December 19, 1942, Gilbert advised Seabury that the McCampbells, a party to the settlement agreement, could be assured that no transfer of interest would be secured from the Balli Grantors, but rather that the Balli interest would "die in Kerlin."

### F. *Post–Settlement History*

Seabury died in 1946. Upon his death, Harbert Davenport became Kerlin's attorney. Kerlin took all of Seabury's papers and files concerning Padre Island and kept them in the basement of his home in New York.

In a letter to Gilbert, dated January 10, 1952, Elmer Johnson, the man who arranged the venture between Gilbert and Fry, Henry, Phillips, and Nami, claimed he was owed a commission for the Balli venture. Gilbert replied that Seabury had a change of vision during the trial of *State v. Balli* and that no recovery could be had on the basis of the Balli title.

On November 30, 1953 and December 17, 1953, Primitivo Balli wrote letters to Kerlin, requesting documents showing his interest in Padre Island. By letter dated December 16, 1953, Kerlin responded that he had acquired no title under the deeds from the Balli Grantors. Kerlin did not tell Primitivo about the reconveyance deeds or that *Havre v. Dunn* had been settled and dismissed. On May 10, 1954, Primitivo Balli wrote Kerlin acknowledging receipt of the December 16 letter and requesting that Kerlin return his birth certificate. On May 27, 1954, Primitivo Balli again requested his birth certificate, which was later returned by Kerlin.

On June 2, 1954, Kerlin again wrote to Primitivo Balli. Kerlin said he was unable to establish that Juan Jose Balli did not sell all of his interest in Padre Island and that the heirs of Juan Jose Balli had no basis to claim any interest in Padre Island.

On June 2, 1954, Kerlin also wrote a letter to Davenport, informing him that Primitivo Balli had written and he did not know whether Primitivo's letter was preliminary to a claim. After June 2, 1954, Kerlin had no further communication with Primitivo Balli.

On June 28, 1961, Kerlin sold the surface of the 20,000 acre tract that he received in the *Havre v. Dunn* settlement, together with other land, for $3,412,500. Kerlin and his wife also conveyed all mineral interests in Padre Island to P.I. Corporation, which was entirely owned by Kerlin. North Central Oil Corporation acquired the one-fourth interest of George de Peyster, a partner of Kerlin, in the Padre Island minerals. North Central Oil subsequently conveyed the de Peyster interest to Windward Oil & Gas Corporation, which is also wholly owned by Kerlin.

In 1985, Connie Sauceda, a descendant of the Balli Grantors, contacted Kerlin regarding the royalty reservations in the deeds signed by the Balli Grantors. Kerlin told Sauceda that the deeds were invalid and that she was wasting her time. Although Sauceda did not mention a lawsuit, Kerlin told Sauceda that she would have the burden of proof, an action would cost a lot of money, and that an action would take years to find out what happened.

### G. *The Ensuing Lawsuit*

In February 1993, some of the Balli Claimants filed suit against the Kerlin Group. As the suit progressed, additional Balli Claimants joined the suit, as well as intervenors asserting different causes of action from the Balli Claimants.

In their seventh amended petition, the Balli Claimants alleged the following causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) fraud;

and (4) conspiracy to commit fraud and breach of fiduciary duty. The Balli Grantors sought compensation for their damages, declaratory judgment, accounting, constructive trust, and attorney fees. The pleading also asserted the discovery rule and fraudulent concealment. In their second amended answer, the Kerlin Group asserted several affirmative defenses, including res judicata, estoppel, statute of limitations, laches, and the statute of frauds.

The jury found that: (1) Kerlin was estopped from denying the validity of the Balli deeds and the royalty reservations set out therein; (2) Kerlin acquired an individual interest in the eleven Balli deeds; (3) the royalty interest intended to be collectively reserved to the Balli Grantors was 1/64 of a 1/8 royalty; (4) Kerlin and P.I. Corporation failed to comply with the fiduciary duties to each of the Balli Grantors, with respect to the royalty interests reserved in the eleven deeds; (5) Seabury breached the fiduciary duty owed to the Balli Grantors during the settlement of *Havre v. Dunn*; (6) Kerlin was part of a conspiracy with Seabury to breach the fiduciary duties owed to the Balli Grantors in the settlement of *Havre v. Dunn*; (7) Seabury committed fraud against the Balli Grantors during the settlement of *Havre v. Dunn*; (8) Kerlin was part of a conspiracy with Seabury to commit fraud against the Balli Grantors in the settlement of *Havre v. Dunn* that damaged the Balli Grantors; (9) Kerlin failed to comply with his fiduciary duty to each of the Balli Grantors with respect to the royalty interest reserved in the eleven deeds during the settlement of *Havre v. Dunn*; and (10) Kerlin acquired in his own name 7,500 acres of land on Padre Island for the benefit of the Balli Grantors during the settlement of *Havre v. Dunn*, which he did not share with the Balli Grantors.

The Balli Grantors subsequently filed motions to disregard some of the jury findings and for judgment notwithstanding the verdict. The trial court granted the Balli Claimants' request to disregard the jury's answers to Jury Charge Question Numbers 20, 21, and 22 and denied their request to disregard the jury's answers to Jury Charge Question Numbers 2, 3, and 7. On the same day, the trial court denied the Kerlin Group's motion for judgment notwithstanding the verdict and the Balli Claimants' request that the court order an accounting and disgorgement of profits.

The trial court signed the final judgment on November 20, 2000. On December 15, 2000, the Balli Claimants filed a motion to modify the final judgment, and on December 20, 2000, the Kerlin Group filed a motion for new trial and motion to modify, correct, or reform the final judgment. On December 20, 2000, the trial court signed an order granting in part and denying in part the Balli Claimants' motion to modify the final judgment. A modified final judgment was signed on December 20, 2000. The Kerlin Group's motion for new trial and motion to modify, correct, or reform the judgment were overruled by operation of law. The Balli Claimants filed and duly perfected appeal. The Kerlin Group also duly perfected appeal.

## II. THE KERLIN GROUP'S ISSUES ON CROSS-APPEAL

By cross-appeal, the Kerlin Group raises twelve issues, including challenges to the trial court's conclusions of law, admission of evidence, jury charge questions, sufficiency of the evidence, and damages.

### A. *Conclusions of Law*

The Kerlin Group challenges several conclusions of law made by the trial court. We review a trial court's conclusions of law de novo to determine whether the trial

court drew the correct legal conclusions from the facts. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996); *Aguero v. Ramirez*, 70 S.W.3d 372, 373 (Tex.App.-Corpus Christi 2002, pet. denied); *Dallas Morning News v. Bd. of Trustees*, 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied). We are not bound by the trial court's conclusions of law. An appellate court is free to draw its own legal conclusions. *Aguero*, 70 S.W.3d at 373.

Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Mack v. Landry*, 22 S.W.3d 524, 528 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Spiller v. Spiller*, 901 S.W.2d 553, 556 (Tex.App.-San Antonio 1995, writ denied). Conclusions of law will not require reversal if the controlling finding of facts will support a correct legal theory. *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 351 (Tex.2001); *Aguero*, 70 S.W.3d at 373.

### 1. Stare Decisis, Res Judicata, and Collateral Estoppel

In its first issue, the Kerlin Group contends that the doctrines of stare decisis, res judicata, and collateral estoppel precluded the Balli Claimants' filing of the underlying action.

#### a. Stare Decisis

The Kerlin Group asserts that the decision in *State v. Balli* bars the Balli Claimants' suit. The Kerlin Group argues that the dispute as to how the land titles of Padre Island should be interpreted has already been determined by the Texas Supreme Court in *State v. Balli*. Therefore, a subsequent determination is barred by the doctrine of stare decisis.

The doctrine of stare decisis provides that after a principle, rule, or proposition of law has been decided by the Texas Supreme Court, or the highest court of the State having jurisdiction over a particular case, the decision is accepted as binding precedent by the same court or other courts of lower rank when the point is presented in a subsequent suit between different parties. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964). As generally applied, the doctrine governs only the determination of questions of law, and observance does not depend on the identity of the parties. *Id.* Stare decisis is generally not conclusive as to the determination of a disputed issue of fact when the same issue arises in another case between persons who are strangers to the record in the first suit. *Id.*

The doctrine of stare decisis applies to suits involving claims to titles of land. *Robbins v. HNG Oil Co.*, 878 S.W.2d 351, 361 (Tex.App.-Beaumont 1994, writ dism'd w.o.j.). Where the supreme court has given definite effect to a specific writing or a particular fact situation, such as when it determines the true construction of a will or the validity of a deed, that determination is binding and conclusive in all subsequent suits involving the same subject matter, whether the parties and the property are the same or not. *Case–Pomeroy Oil Corp. v. Pure Oil Co.*, 279 S.W.2d 886, 888 (Tex.Civ.App.-Waco 1955, writ ref'd). This is true because of the importance of establishing stability of land titles, sales, and transactions. *Robbins*, 878 S.W.2d at 361.

While in *State v. Balli*, the supreme court did review issues of fact that were relevant to the issue of whether the State of Texas had a valid claim to Padre

Island, the court did not issue a proposition of law that bars consideration of the issues of fact in controversy in this case. Nor did the supreme court construe or give definite meaning to any of the twelve warranty deeds conveyed by the heirs of Juan Jose Balli to Kerlin. Finally, the ultimate question of law in *State v. Balli* was whether the defendant's failure to comply with the Relinquishment Act[1] and Section 8, Article 14 of the Texas Constitution of 1876 forfeited the land grant of Padre Island. We conclude that the question presented in *State v. Balli* is manifestly different from the questions of law presented in the instant case. "Clearly, we think, the decision of the former 'question of law' could not and should not apply to, control, or determine the latter 'question of law', a separate and distinct question, determinable under entirely different principles and decisions." *Joslin v. State,* 146 S.W.2d 208 (Tex.Civ.App.-Austin 1940, writ ref'd). Accordingly, we hold that the doctrine of stare decisis did not bar the Balli Claimants' claims against the Kerlin Group.

### b. Res Judicata

The Kerlin Group further asserts that the claims of the Balli Claimants are barred by the doctrine of res judicata. Specifically, the Kerlin Group contends that these claims are barred by the court decisions in *U.S. v. 34,884 Acres* and *State v. Balli.*

 Res judicata, also referred to as claim preclusion, prevents the relitigation of a finally adjudicated claim and related matters that should have been litigated in a prior suit. *State & County Mut. Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696 (Tex.2001); *Barr v. Resolution Trust*

*Corp.,* 837 S.W.2d 627, 628 (Tex.1992). Claim preclusion prevents splitting a cause of action. *Barr,* 837 S.W.2d at 628; *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985). The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr,* 837 S.W.2d at 628.

 Federal law controls the determination of whether res judicata will bar a later state court proceeding. *San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 281 (Tex.1996); *Eagle Props., Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex. 1990). Therefore, we will review whether the doctrine of res judicata bars the claims of the Balli Claimants using two different standards of review.

#### i. Res Judicata Under the Texas Standard

 Texas follows the transactional approach to res judicata. *State & County Mut. Fire Ins. Co.,* 52 S.W.3d at 696. This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit. *Id.* However, when the parties are co-parties rather than opposing parties, the compulsory-counterclaim rule and res judicata only act as a bar to a co-party's claim in a subsequent action if the co-parties had "issues drawn between them" in the first action. *Id.* (citing *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 800 (Tex.1992)). For purposes of res judicata, co-parties have issues drawn between them and become adverse when one co-party files a

---

1. *See* Act approved February 10, 1852, 2nd Leg., R.S., ch. 71 § 1, 1852 Tex. Gen. Laws 2, 2, *reprinted* 3 H.P.N. Gammel, The Laws of Texas 1847–1854, at 941 (Austin, Gammel Book Co. 1898).

cross-action against a second co-party. *See id.*

In *State v. Balli*, the heirs of Juan Jose Balli and Kerlin were co-defendants, alongside various other holders of conflicting title to Padre Island. While Kerlin did file a cross-claim against the State, Kerlin and the heirs of Juan Jose Balli remained co-parties as opposed to cross-parties during the proceedings. It was not the intent of parties defending against the suit to resolve title ownership claims. In fact, the defendants in the case actually stipulated that they waived all rights to prosecute cross-actions and controversies among themselves. The parties also stipulated that "nothing done in this case is to be considered as res adjudicata (sic) or shall prejudice the rights of said defendants as to any issues between those defendants...." As there were no "issues drawn between them," Kerlin and the heirs of Juan Jose Balli were not compelled to bring counterclaims against the other in the *State v. Balli* case. *See id.* Therefore, the claims of the Balli Claimants were not precluded by the decision in *State v. Balli* and the doctrine of res judicata.

### ii. Res Judicata Under the Federal Standard

We must apply federal law in analyzing whether the claims of the Balli Claimants are barred by the decision in *U.S. v. 34,884 Acres*, because that case was a federal court decision now being used to bar a state court proceeding. *See San Antonio Indep. Sch. Dist.*, 936 S.W.2d at 281; *Eagle Props., Ltd.*, 807 S.W.2d at 718. Under federal law, the doctrine of res judicata will apply if: (1) the parties are identical or in privity; (2) the prior judgment is rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both cases. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir.1999); *San Antonio Indep. Sch. Dist.*, 936 S.W.2d at 281; *Eagle Props., Ltd.*, 807 S.W.2d at 718.

It is a fundamental principle of American jurisprudence that a person cannot be bound by a judgment in litigation to which he was not a party. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir.1990). Nevertheless, federal courts have held that in certain circumstances, judgments can bind persons not party to the litigation in question. *Id.* This applies to persons in privity with parties to the litigation. *Id.* For res judicata purposes, privity exists under three circumstances. First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. *Id.; Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.1977).

The Balli Claimants stand in privity with the Balli Grantors, because they have succeeded to those parties' interest in property bound by *U.S. v. 34,884 Acres.* Thus, we conclude that the first element of federal claim preclusion is satisfied.

The second and third elements of federal claim preclusion also appear satisfied. Neither party has questioned whether the court in *U.S. v. 34,884 Acres* had competent jurisdiction, and neither party has questioned the validity of the judgment in that case.

To determine whether two suits involve the same claim under the fourth element, the Fifth Circuit has adopted the transac-

tional test of the Restatement (Second) of Judgments, Section 24. *In re Southmark Corp.*, 163 F.3d at 934. The critical issue is whether the two actions under consideration are based on "the same nucleus of operative facts." *Id.*

The Kerlin Group failed to set forth an argument demonstrating whether the present suit and the suit in *U.S. v. 34,884 Acres* arise out of the same nucleus of operative facts. Furthermore, it appears that the core facts from which *U.S. v. 34,884 Acres* and the present action arise differ. *U.S. v. 34,884 Acres* was a condemnation suit against all possible holders of title to Padre Island. By contrast, the core facts in the present suit concern whether Kerlin breached his fiduciary duty and committed fraud by concealing and converting property interests owed to the Balli Claimants. Although both suits are derived out of the initial grant by the State of Tamaulipas, Mexico to Juan Jose Balli and the conflicting chains of title from that grant, the "nucleus of operative facts" or facts rudimentary to discerning the claims at issue are dissimilar.

Thus, the Kerlin Group failed to demonstrate that federal claim preclusion barred the instant case under *U.S. v. 34,884 Acres*. Accordingly, we hold that res judicata does not bar the present claim under either *State v. Balli* or *U.S. v. 34,884 Acres*.

### c. Collateral Estoppel

▇▇▇▇ The Kerlin Group asserts that the Balli Claimants were collaterally estopped from bringing the underlying suit because of *U.S. v. 34,884 Acres*. Collateral estoppel, or issue preclusion, prevents relitigation of particular issues already resolved in a prior suit. *Barr*, 837 S.W.2d at 628. The Texas Supreme Court has declined to decide whether state or federal collateral estoppel law governs the preclu-

sive effect of a prior federal judgment on a subsequent state court action. *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 519 n. 7 (Tex.1998). This is because the court has determined that the standard of review for issue preclusion is the same under both the federal and state standards. *Id.; John G. & Marie Stella Kenedy Mem. Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex.2002); *Eagle Props., Ltd.*, 807 S.W.2d at 721. Under both federal and Texas law, a party seeking to assert the bar of collateral estoppel must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *John G. & Marie Stella Kenedy Mem. Found.*, 90 S.W.3d at 288.

▇▇▇▇ The Kerlin Group failed to provide reasons why collateral estoppel should bar the case at hand. Nevertheless, we conclude that the decision in *U.S. v. 34,884 Acres* does not support the imposition of collateral estoppel. It is a generally accepted proposition that collateral estoppel is not applied to an action unless the parties were adversaries in the original action. Restatement (Second) of Judgments, Section 38 provides:

> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered.

RESTATEMENT (SECOND) OF JUDGMENTS § 38 (1982); see also *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 821 n. 1 (Tex. 1984) (J. McGee, dissenting). In *U.S. v. 34,884 Acres*, Kerlin and the heirs of Juan Jose Balli were co-parties who did not

maintain adversarial positions during the proceedings. The doctrine of collateral estoppel cannot be applied under these circumstances.

Thus, the doctrines of stare decisis, res judicata, and collateral estoppel did not bar the case at hand. Accordingly, we overrule the Kerlin Group's first issue.

### 2. Laches

In its sixth issue, the Kerlin Group generally asserts that the claims of the Balli Claimants were barred as a matter of law by the equitable doctrine of laches.

▮▮▮ The doctrine of laches is described as a party's unreasonable delay in asserting legal or equitable rights and another's detrimental good-faith change in position because of the delay. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex.App.-Corpus Christi 2001, pet. denied). The application of laches is limited to actions at law that are essentially equitable in character. *Id.* A party must establish the following two elements to claim laches: (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay. *Caldwell v. Barnes,* 975 S.W.2d 535, 538 (Tex.1998). A mere showing of delay does not satisfy the requirements of laches. *Wayne,* 52 S.W.3d at 416. The delay must have injured the defendant. *Id.* The party asserting laches has the burden of proving it. *Brewer v. Nationsbank of Texas,* 28 S.W.3d 801, 804 (Tex. App.-Corpus Christi 2000, no pet.).

▮▮▮ The Kerlin Group argues that all facts and occurrences relating to the Balli Claimants were known or readily available more than fifty years before this case was filed. Assuming that the first element of laches is satisfied, we conclude that the Kerlin Group failed to show detriment or harm resulting from the delay.

Accordingly, we hold that laches does not bar the claims of the Balli Claimants. We overrule the Kerlin Group's sixth issue.

### 3. Statutory Tolling Defense

In its seventh issue, the Kerlin Group raises the following two sub-issues: (1) whether the trial court erred in holding that limitations were statutorily tolled as a matter of law; and (2) whether the trial court erred in granting the Balli Claimants' motion for judgment notwithstanding the verdict on Jury Charge Question Numbers 21 and 22.

Section 16.063 of the Texas Civil Practices and Remedies Code provides: "The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence." TEX. CIV. PRAC. & REM. CODE ANN. § 16.063 (Vernon 1997).

▮▮▮ The Kerlin Group argues that the tolling provisions of section 16.063 are inapplicable in this case because the section generally does not apply to nonresidents. *See Wyatt v. Lowrance,* 900 S.W.2d 360, 362 (Tex.App.-Houston [14th Dist.] 1995, writ denied). However, the tolling provision does apply to a nonresident who was present in the state when the obligation arose. *Howard v. Fiesta State Show Park, Inc.,* 980 S.W.2d 716, 723 (Tex.App.-San Antonio 1998, pet. denied); *Wyatt,* 900 S.W.2d at 362.

The Kerlin Group has failed to make a cogent argument as to why the trial court erred in applying section 16.063 in this case. Because section 16.063 appears to be a relevant and applicable rule of law in this case, we overrule the first sub-issue of the Kerlin Group's seventh issue. We will

address the second sub-issue later in this opinion.

#### 4. Estoppel by Deed

In its second and third issues, the Kerlin Group questions whether the trial court appropriately allowed submission of the theory of "estoppel by deed" to the jury.

 Estoppel by deed stands for the general proposition that "all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law." *Wallace v. Pruitt*, 1 Tex.Civ.App. 231, 20 S.W. 728, 728–29 (1892, no writ). Estoppel by deed or contract precludes parties to a valid instrument from denying its force and effect. *Schroeder v. Tex. Iron Works, Inc.*, 769 S.W.2d 625, 628–29 (Tex.App.-Corpus Christi 1989), *aff'd on other grounds*, 813 S.W.2d 483 (Tex.1991). To determine whether the doctrine of estoppel by deed should apply to a deed and the recitals therein, we look to the intention of the parties to the instrument, to be determined from the writing itself by the consideration whether the recital was designed to furnish a basis of action by the parties. *Wallace*, 20 S.W. at 729. In other words, whether the parties intended to bind themselves, to contract, as set forth in the instrument. *Id.*

The Kerlin Group first argues that the Balli Claimants' estoppel by deed theory was improperly brought, thus violating the "defensive character" of the doctrine of estoppel. In support, the Kerlin Group cites *Southland Life Ins. Co. v. Vela*, which stated:

An estoppel is defensive in character. It does not create a cause of action. Its function is to preserve rights, and not to bring into being a cause of action.

147 Tex. 478, 217 S.W.2d 660, 663 (1949).

 However, the Kerlin Group has misconstrued the theory of estoppel by deed as applied in this case. The Balli Claimants did not allege a cause of action arising out of their claim of estoppel by deed. Rather, they pleaded estoppel by deed to block the Kerlin Group from disavowing the royalty reservations in the deeds drafted by Seabury and Kerlin. Estoppel by deed is a bar that precludes a party from denying the truth of a deed. *Talley v. Howsley*, 170 S.W.2d 240, 243 (Tex.Civ.App.-Eastland), *aff'd*, 142 Tex. 81, 176 S.W.2d 158 (1943). The doctrine may be invoked in a suit concerning a right arising out of a deed. *Id.* As such, the use of estoppel by deed by the Balli Claimants does not act offensively, but is simply effected to prohibit the Kerlin Group from denying the existence of an agreement into which the Kerlin Group entered.

 Secondly, the Kerlin Group argues that estoppel by deed does not conceptually apply to reservations. This proposition is incorrect. Although estoppel by deed most commonly operates upon a grantor in favor of a grantee, the doctrine may be applied against a grantee in favor of a grantor through covenants of the grantee that run with the land purportedly conveyed. *Id.*, 170 S.W.2d at 243. The general rule is "that the grantee in a deed accepted by him is a party to the deed ... and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor." *Greene v. White*, 137 Tex. 361, 153 S.W.2d 575, 583 (1941); *see also Waco Bridge Co. v. City of Waco*, 85 Tex. 320, 20 S.W. 137, 139 (1892). Because the deeds in question contain reservations in favor of the Balli Grantors, we conclude the trial court did not err in submitting the issue of "estoppel

by deed" to the jury. We overrule the Kerlin Group's second and third issues.

### 5. Breach of Fiduciary Duty

■ In its fourth issue, the Kerlin Group contends that the trial court erred in holding as a matter of law that Gilbert Kerlin, as owner of the executive rights, owed a fiduciary duty to the Balli Grantors, non-participating royalty interest holders.[2]

■ Texas courts generally have applied a standard of "utmost good faith" to one who exercises executive rights to lease or develop minerals. *Hlavinka v. Hancock*, 116 S.W.3d 412, 417 (Tex.App.-Corpus Christi 2003, pet. denied) (citing *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543, 545 (1937); *Luecke v. Wallace*, 951 S.W.2d 267, 274 (Tex.App.-Austin 1997, no writ)). In *Manges v. Guerra*, 673 S.W.2d 180 (Tex.1984), the supreme court determined that, apart from any contract, when an executive exercises his rights, "[a] fiduciary duty arises from the relationship of the parties.... [T]hat duty requires the holder of the executive right to acquire for the non-executive every benefit that he exacts for himself." *In re Bass*, 113 S.W.3d 735, 744 (Tex.2003) (quoting *Manges*, 673 S.W.2d at 183–84); *see Hlavinka*, 116 S.W.3d at 417. The supreme court thereby created a fiduciary duty between executive and non-executive interest holders in mineral deeds. *See Bass*, 113 S.W.3d at 744 (citing *Manges*, 673 S.W.2d at 180). However, this fiduciary duty is only imposed on an executive in conjunction with the execution of oil and gas leases. *See Id.* (citing *Schlittler v. Smith*, 128

Tex. 628, 101 S.W.2d 543, 545 (Tex.1937)); *Hlavinka*, 116 S.W.3d at 420. If the executive never exercises his power, there can be no imposition or breach of a fiduciary duty. *Hlavinka*, 116 S.W.3d at 420.

■ In the instant case, the evidence shows that the Balli Grantors executed deeds conveying to Kerlin "all of the interest which [they] had [in Padre Island] ... irrespective of the acreage or quantity therefore," reserving only a royalty interest. Although the acreage of and title to the lands covered by the deeds were contested, the Kerlin Group asserted the validity of the Balli Grantors' deeds during the settlement negotiations to resolve ownership claims to Padre Island. The evidence showed, and the jury found, that 7,500 acres of the property received by Kerlin as a result of the settlement was based on Kerlin's assertion of the Balli deeds, and had been awarded to Kerlin for the benefit of the Balli Grantors. However, when the Balli Grantors inquired as to the status of their interests, Kerlin asserted that he had obtained no interest based on their conveyances to him. By claiming that the property he acquired as a result of the settlement agreement was not derivative of nor based on the conveyances from the Balli Grantors, Kerlin attempted to eliminate or circumvent the royalty interests reserved by the Balli Grantors. He subsequently withheld from the Balli Grantors all of the money to which they were entitled under the deeds.

When Kerlin executed leases on the property, he was exercising his executive right. The nonparticipating royalty inter-

---

**2.** A non-participating royalty interest is an interest in minerals which does not entitle the owner to produce the minerals himself, or permit him to join in leases of the mineral estate to which the royalty is appurtenant, and does not entitle the owner to share in the bonus or delay rentals, if any, paid for such

lease. It merely entitles the owner to a certain share of the production under said lease free of expenses of exploration and production. *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 825 (Tex.Civ.App.-Houston [1st Dist.] 1957, writ ref'd n.r.e.)

ests reserved by the Balli Grantors are, by definition, non-executive interests. *See Bass,* 113 S.W.3d at 744. Therefore, under the supreme court's holding in *Manges,* a fiduciary duty was imposed between the Balli Grantors as the non-executive and Kerlin as the executive.

We determine that the trial court did not err in concluding that Kerlin owed a fiduciary duty to the Balli Grantors. We overrule the Kerlin Group's fourth issue.

### 6. Conspiracy

As an additional issue, the Kerlin Group argues that Kerlin cannot be "charged" as a conspirator because of his status as a co-client with Seabury. In support, the Kerlin Group cites *Bradt v. West,* 892 S.W.2d 56 (Tex App.-Houston [1st Dist.] 1994, writ. denied).

The court in *Bradt v. West* held that a client cannot be liable for the attorney's conduct, unless a client is implicated in some way other than merely having entrusted legal representation to the attorney. *Id.* The holding in *Bradt v. West* does not support the proposition that the Kerlin Group espouses. Because the Kerlin Group did not provide any additional references to the record or citations to authority, we conclude that the trial court committed no error with regard to this issue. Accordingly, we overrule this additional issue.

### 7. Fraudulent Concealment

In its eighth issue, the Kerlin Group argues, in part, that the trial court erred in applying fraudulent concealment as a legal theory.

 Fraudulent concealment is an equitable doctrine that provides defense to the bar of limitations. *Santanna Natural Gas Corp. v. Hamon Operating Co.,* 954 S.W.2d 885, 890 (Tex.App.-Austin 1997,

pet. denied). Under the doctrine of fraudulent concealment, the accrual of the plaintiff's cause of action is deferred because a defendant cannot be permitted to avoid liability for its actions by deceitfully concealing wrongdoing until the statute of limitations has run. *Id.* The essence of fraudulent concealment is first, actual knowledge that a wrong has occurred, and second, a fixed purpose to conceal the facts necessary for the plaintiff to know that the cause of action has accrued. *Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577, 584 (Tex.App.-Dallas 1991, writ denied).

 The elements of fraudulent concealment are: (1) the existence of an underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Mitchell Energy Corp. v. Bartlett,* 958 S.W.2d 430, 439 (Tex.App.-Fort Worth 1997, pet. denied); *DiGrazia v. Old,* 900 S.W.2d 499, 502 (Tex.App.-Texarkana 1995, no writ); *Arabian Shield Dev. Co.,* 808 S.W.2d at 585. To establish the affirmative defense of fraudulent concealment, the plaintiff has the burden of putting forth proof that raises an issue of fact with respect to that claim. *Santanna Natural Gas Corp.,* 954 S.W.2d at 890.

 The Kerlin Group contends that fraudulent concealment is inapplicable because the disposition of *Havre v. Dunn* was a matter of public record. The Kerlin Group argues that when constructive notice of matters of public record is imputed, it is conclusive over any claimed lack of actual notice. Kerlin Group cites *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998), but does not provide any further argument in support of its position.

 In *HECI Exploration Co. v. Neel,* the Texas Supreme Court articulated

two principles that apply to the discovery rule. *HECI Exploration Co.,* 982 S.W.2d at 886. These principles are that the nature of the injury must be inherently undiscoverable and that the injury itself must be objectively verifiable. *Id.* The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim. *Wagner & Brown v. Horwood,* 58 S.W.3d 732, 734 (Tex.2001). However, the Kerlin Group cites *HECI Exploration Co. v. Neel* for a proposition affecting the application of the doctrine of fraudulent concealment. The discovery rule and fraudulent concealment are distinct concepts that exist for different reasons. *Id.* at 736. The courts observe a distinction between the two doctrines because each is characterized by different substantive and procedural rules. *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). Even the Court in *HECI Exploration Co. v. Neel* recognized the distinction, stating, "Although we determine whether the discovery rule applies to particular types of cases rather than to a particular case, we note that HECI gave the Neels whatever information they wanted when asked. Of course, if an operator fraudulently concealed information from a lessee, decisions of this and other courts indicate that limitations may be tolled." *HECI Exploration Co.,* 982 S.W.2d at 886.

We hold the trial court did not err in allowing the doctrine of fraudulent concealment. We overrule that part of the Kerlin Group's eighth issue relating to fraudulent concealment.

### B. *Motion for Judgment Notwithstanding the Verdict*

In the second sub-issue of its seventh issue, the Kerlin Group questions whether the trial court erred in granting the Balli Claimants' motion for judgment notwithstanding the verdict on Jury Charge Question Numbers 21 and 22. Question Numbers 21 and 22 concern application of the statutory tolling provision. *See* Tex. Civ. Prac. & Rem.Code § 16.063 (Vernon 1997).

Question Number 21 asked the jury:

Do you find that Gilbert Kerlin was physically present in the State of Texas and committed any act in furtherance of the conspiracy during any time that F.W. Seabury breached his fiduciary duties to the Juan Jose Balli grantors in the settlement of *Havre v. Dunn?*

Question Number 22 asked the jury:

Do you find that Gilbert Kerlin was physically present in the State of Texas during any time that he breached his fiduciary duty to the Juan Jose Balli grantors in the settlement of *Havre v. Dunn?*

Both Questions contained the following instruction: "You are instructed that 'presence' means actual physical presence within the territorial limits of the State of Texas. Presence for only part of a day is not counted as a presence for the whole day."

The jury answered "no" to both Questions. In their motion for judgment notwithstanding the verdict, the Balli Claimants asserted that the undisputed evidence showed that Gilbert Kerlin was in Texas during the period from November 6, 1942 to November 9, 1942. The trial court agreed and granted the Balli Claimants' motion for judgment notwithstanding the verdict on Jury Charge Question Numbers 21 and 22.

 A trial court may grant a judgment notwithstanding the verdict if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Brown v. Bank of Gal-*

*veston, N.A.,* 963 S.W.2d 511, 513 (Tex. 1998); *see also* Tex.R. Civ. P. 301. In determining whether there is no evidence to support the jury verdict and thus uphold the judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the verdict and reasonable inferences that tend to support it. *Brown,* 963 S.W.2d at 513.

■ Jury Charge Question Number 21 was predicated on the jury's answers to Question Numbers 9 and 10. In Question Number 9, the jury answered that Seabury breached his fiduciary duties during the settlement of *Havre v. Dunn.* In Question Number 10, the jury answered affirmatively to the question "Was Gilbert Kerlin part of a conspiracy with F.W. Seabury to breach his fiduciary duties to the Juan Jose Balli grantors in the settlement of *Havre v. Dunn* that damaged the Juan Jose Balli grantors?" The Kerlin Group did not challenge the jury's answers to Question Numbers 9 or 10.

The undisputed evidence shows that Kerlin took a three-day leave from the army and came to Texas between November 6, 1942 and November 9, 1942. His purpose in coming to Texas was to sign the settlement agreement in *Havre v. Dunn,* which had been negotiated by Seabury. Accepting the jury's unchallenged answers that Seabury breached his fiduciary duty in the settlement of *Havre v. Dunn* and the jury's finding that Kerlin conspired with Seabury to breach those fiduciary duties, Kerlin's presence in Texas to consummate the *Havre v. Dunn* settlement is sufficient proof to result in an affirmative finding to Question Number 21. The Kerlin Group did not set forth any contrary evidence.

We find no evidence in the record to support the jury's answer to Question Number 21. Accordingly, we affirm the trial court's order granting the Balli Grantors' motion for judgment notwithstanding the verdict on Question Number 21.

Similarly, Question Number 22 was predicated on Question Number 13. In Question Number 13, the jury found that during the settlement of *Havre v. Dunn,* Kerlin failed to comply with his fiduciary duty to each of the Juan Jose Balli grantors arising out of the royalty reservations in deeds conveyed. By implication, Kerlin's presence in Texas to consummate the settlement of *Havre v. Dunn* necessarily satisfies the question of "presence" in Question Number 22.

Again, the record contains no evidence to support the jury's answer to Question Number 22. Accordingly, we affirm the trial court's order granting the Balli Grantors' motion for judgment notwithstanding the verdict on Question Number 22. The second sub-issue of the Kerlin Group's seventh issue is overruled.

### C. *Evidence*

In its ninth issue, the Kerlin Group contends, in part, that the trial court erred in admitting evidence of a settlement proposal. In response, the Balli Claimants argue that the Kerlin Group waived objection to this evidence because the settlement proposal was later offered into evidence and was admitted without objection.

■ As a general rule, error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Richardson v. Green,* 677 S.W.2d 497, 501 (Tex.1984); *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 242–43 (Tex.App.-Corpus Christi 1994, writ denied). Even though an objection to evidence is properly made, prior or subsequent presentation of essentially the same evidence without objection waives error.

*Atkinson Gas Co.,* 878 S.W.2d at 242–43; *Celotex Corp. v. Tate,* 797 S.W.2d 197, 201 (Tex.App.-Corpus Christi 1990, no writ); *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 488 (Tex.App.-Corpus Christi 1990, writ denied).

However, a seemingly contradictory presumption has also been generally accepted that, when a party makes a proper objection to the introduction of certain testimony by a witness and is overruled, he is entitled to assume that the judge will make the same ruling as to other offers of similar evidence, and he is not required to repeat the objection. *Atkinson Gas Co.,* 878 S.W.2d at 242–43. This is particularly true when the party has obtained a running objection concerning similar evidence elicited from the same witness. *Id.*

This Court has concluded that the determination of whether a prior objection is sufficient to cover a subsequent offer of similar evidence depends upon a case-by-case analysis, based on such considerations as the proximity of the objection to the subsequent testimony, which party has solicited the subsequent testimony, the nature and similarity of the subsequent testimony as compared to the prior testimony and objection, whether the subsequent testimony has been elicited from the same witness, whether a running objection was requested or granted, and any other circumstances which might suggest why the objection should not have to be reurged. *Id.*

The settlement proposal was offered by the Balli Claimants during Kerlin's examination. A timely objection was raised, but the trial court overruled the objection. The Kerlin Group then requested a running objection to the evidence. Later, during the cross-examination of Kerlin, the Kerlin Group introduced the settlement proposal and referred to it at length. The Kerlin Group recited almost the entirety of the settlement proposal and accompanying cover letter. Kerlin never refuted the validity of the contents of the document. The Kerlin Group subsequently introduced other documents related to the settlement negotiations, which may have been otherwise inadmissible under the same grounds of objection.

We hold that the Kerlin Group waived its objection to the settlement proposal when it later introduced the same settlement proposal into evidence. We overrule that part of the Kerlin Group's ninth issue relating to the trial court's admission of the settlement proposal into evidence.

### D. *Charge Error*

In its fifth, seventh, eighth, ninth, and twelfth issues, the Kerlin Group contends the trial court erred in submitting and refusing to submit certain charge questions to the jury.

The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 664 (Tex.1999). Toward that end, the trial judge is accorded broad discretion so long as the charge is legally correct. *Id.* A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Kajima Int'l v. Formosa Plastics Corp.,* 15 S.W.3d 289, 291 (Tex.App.-Corpus Christi 2000, pet. denied).

#### 1. Estoppel by Deed

In its fifth issue, the Kerlin Group contends the trial court erred in submitting Jury Charge Question Number 1 to the jury. Question Number 1 asked the jury, in part, "Is Gilbert Kerlin estopped to deny the validity of the eleven Balli

deeds and the royalty reservations contained therein?"

■ An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to relevant authority and to the record. TEX.R.APP. P. 38.1(h). Failure to cite authority in support of an issue on appeal waives the complaint. *In re Barr*, 13 S.W.3d 525, 555 (Tex.Rev.Trib.1998). Because the Kerlin Group failed to support this contention with citations to authority or the record, we hold it is waived.

### 2. Breach of Fiduciary Duty

Also in its fifth issue, the Kerlin Group contends the trial court erred in submitting Jury Charge Question Number 6 to the jury.

In Question Number 6, the trial court instructed the jury that Gilbert Kerlin, as owner of the executive rights, owed a fiduciary duty to the Balli Grantors and their heirs, as nonparticipating royalty interest holders. The jury was asked whether Gilbert Kerlin and the P.I. Corporation failed to comply with that fiduciary duty. The jury answered "yes" to Question Number 6. However, the jury found no damages arising from the failure to comply.

We have previously held that the trial court did not err in concluding that an executive rights owner owes a fiduciary duty to nonparticipating royalty interest holders. Accordingly, we hold the trial court did not abuse its discretion in submitting Question Number 6 to the jury.

### 3. Evidence of Settlement

■ In its ninth issue, the Kerlin Group contends the trial court erred in submitting Question Number 14 to the jury because it was a direct comment on the weight of the evidence. We hold that the Kerlin Group has waived this issue on two grounds.

First, despite its claim to the contrary, the Kerlin Group did not object to the submission of this question on the ground that it commented on the weight of the evidence. A complaining party must object to the submission of an erroneous question, instruction, or definition. TEX.R. CIV. P. 274; *Morales v. Morales*, 98 S.W.3d 343, 346 (Tex.App.-Corpus Christi 2003, pet. denied). Failure to raise an objection to Question Number 14 on the grounds specified on appeal constitutes waiver. *See* TEX.R. CIV. P. 274; *Morales*, 98 S.W.3d at 346.

Secondly, the Kerlin Group failed to make a discernable argument regarding this issue. Failure to adequately brief an issue results in waiver. *See* TEX.R.APP. P. 38.1(h); *see also Smith v. Smith*, 112 S.W.3d 275, 280 (Tex.App.-Corpus Christi 2003, pet. denied).

### 4. Fraudulent Concealment

In its fifth and eighth issues, the Kerlin Group also contends the trial court erred in submitting questions regarding the issue of fraudulent concealment to the jury. The Kerlin Group asserts that the Balli Claimants should have submitted an issue regarding whether the Ballis knew or should have known that they might have a right of action, which is necessarily a component to a fraudulent concealment defense. In support, the Kerlin Group cites *Advent Trust Co. v. Hyder*, 12 S.W.3d 534 (Tex.App.-San Antonio 1999, pet. denied).

■ *Advent Trust v. Hyder* arose out of an oil and gas dispute. A complaint was filed with the Texas Railroad Commission that resulted in the complaining party's settlement and surrender of interests in an oil and gas field. *Id.* at 537. The complainant later filed a claim against the oil and gas operator for recovery of the value

of the interest surrendered. *Id.* at 538. The complainant alleged that the operator, who was responsible for filing required reports with the Texas Railroad Commission, negligently or fraudulently had failed to file required reports, thereby misrepresenting the nature and extent of gas in the surrendered fields. *Id.* The responding party answered that all claims were barred by limitations. *Id.* The complainant responded that the discovery rule, fraudulent concealment, and equitable estoppel applied. *Id.* A jury found for the complainant, but the court of appeals reversed. *Id.*

The complainant submitted questions to the jury regarding fraud, proximate cause, and damages. *Id.* at 541. Premised on affirmative responses to those questions, the charge asked, "On what date do you find from a preponderance of the evidence that Plaintiffs discovered, or through the exercise of reasonable care and diligence should have discovered, the fraud of ... Ginther?" *Id.* at 542. The same question followed questions regarding breach of contract, negligence, and negligent misrepresentation. *Id.* Questions regarding fraudulent concealment were not submitted to the jury. *Id.* The court of appeals concluded that the questions submitted to the jury involved the substantive tort of fraud, not fraudulent concealment. *Id.* Thus, the respondent was not on notice of the possibility of a deemed finding on fraudulent concealment or equitable estoppel. *Id.*

The jury charge questions concerning fraudulent concealment in this case differ significantly from the charge questions in *Advent Trust v. Hyder.* In this case, Jury Charge Question Numbers 24 and 25 expressly concern the issue of fraudulent concealment. In Question Number 24, the jury found that Gilbert Kerlin and P.I. Corporation fraudulently concealed the fact that from January 1, 1966 through February 8, 1991, they received royalty payments that belonged to the Balli Grantors and their heirs. In Question No. 25, the jury found that from November 9, 1942 through February 8, 1991, Gilbert Kerlin fraudulently concealed the facts, details, and circumstances surrounding the settlement of the *Havre v. Dunn* case from the Balli Grantors and their heirs. In both charge questions, the trial court instructed the jury:

> You are instructed that "fraudulent concealment" means actual suppression of the truth or failure to disclose where there is a duty to disclose. A duty to disclose arises in four situations: 1) Where there is a fiduciary relationship, 2) when one voluntarily discloses information, the whole truth must be disclosed, 3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue, and 4) when one makes a partial disclosure and conveys a false representation.

We conclude that the charge questions are sufficient to have placed the Kerlin Group on notice of the possibility of a deemed finding of fraudulent concealment. It was, therefore, the Kerlin Group's duty to raise an objection to the proposed charge questions. Because the Kerlin Group raised no objection comporting with the issues now raised on appeal, we hold they are waived. Tex.R. Civ. P. 274; *Morales,* 98 S.W.3d at 346.

### 5. Attorney Fees

In its twelfth issue, the Kerlin Group contends the trial court erred in submitting Jury Charge Question Number 4 because it failed to segregate the causes of action for which attorney fees are recoverable from those in which attorney fees were not recoverable.

When one or more causes of action for which attorney fees are not permitted by statute or contract are alleged in a petition and are investigated and pursued at trial, it is incumbent upon the party asserting those causes of action to segregate them from those for which attorney fees can be recovered. *Aetna Cas. & Sur. v. Wild,* 944 S.W.2d 37, 40–41 (Tex. App.-Amarillo 1997, writ denied). A recognized exception to this duty to segregate arises when the attorney fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991). When the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney fees may recover the entire amount covering all claims. *Id.*

After reviewing the entire record, we find that the facts of this case are deeply intertwined and conclude it is very difficult to separate which set of facts or circumstances support the individual causes of action. We also note that the Kerlin Group did not make an attempt to demonstrate the factual distinctions. Accordingly, we cannot say that the trial court abused its discretion by submitting Question Number 4 to the jury.

### 6. Conspiracy to Commit Fraud, Laches, and other issues

In its fifth issue, the Kerlin Group also contends the trial court erred in submitting jury charge questions on conspiracy to commit fraud, conspiracy to commit breach of fiduciary duty, laches, and damages. We hold this issue is waived because the Kerlin Group provided no argument in support of these contentions. Tex

R.App. P. 38.1(h); *see Smith,* 112 S.W.3d at 280.

We overrule the Kerlin Group's fifth, seventh, eighth, ninth, and twelfth issues as they relate to the jury charge.

### E. *Legal and Factual Sufficiency*

In several issues, the Kerlin Group contends the evidence is legally and factually insufficient to support the jury's answers to certain Jury Charge Questions.

When we review a "no evidence" or legal sufficiency of the evidence issue, we must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). A no evidence issue will be sustained when the record discloses that: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is not more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner,* 953 S.W.2d at 711.

When we review an "insufficient evidence" or factual sufficiency of the evidence issue, we consider, weigh and examine all of the evidence which supports or undermines the jury's finding. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We review the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761–62 (Tex.2003). We then set aside the verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Francis,* 46 S.W.3d at 242; *see Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

### 1. Question No. 14

▮▮▮ In its tenth issue, the Kerlin Group contends the evidence is legally and factually insufficient to support the jury's answer to Jury Charge Question Number 14. Question Number 14 asked the jury:

During the settlement of *Havre v. Dunn,* did Gilbert Kerlin acquire, in his name, 7,500 acres of land on Padre Island for the benefit of the Juan Jose Balli grantors that he did not share with them?

The trial court instructed the jury:

In answering this question, you are instructed that any evidence referring to 7,444 acres shall be treated as 7,500 acres.

The jury answered "yes" to Question Number 14.

### a. Legal Sufficiency

The Kerlin Group argues generally that there is no evidence in the record that Gilbert Kerlin received any property intended for the Ballis. In response, the Balli Claimants cite portions of the settlement proposal presented by Seabury on June 9, 1942. In the proposal, Seabury stated:

Juan Jose Balli owned one-half and one-seventh of the other half of the Island, a total of 77,264 acres as per Mr. Boyles' survey. He conveyed to Santiago Morales the north half of the Island plus one-half league, which on the same figures would make 69,820 acres. The difference, 7,444 acres, is the acreage that never was divested out of Juan Jose Balli on any theory of the case.

Seabury then stated:

Gilbert Kerlin and Associates want this to comply with their commitments with the heirs of Juan Jose Balli, whose title is now in Gilbert Kerlin, trustee.

In describing a 20,000 acre tract requested in the settlement, the settlement proposal stated that 7,500 acres was included in that tract "for the Juan Jose interest." On November 9, 1942, a stipulation of settlement was filed with the *Havre v. Dunn* court. The stipulation provides that Gilbert Kerlin received a 20,000 acre tract in the southern division of Padre Island, together with 1,000 mineral acres in the northern division of the island. On December 12, 1942, Davenport wrote to Eckhardt:

Seabury has agreed to avoid, if possible, giving the Ballis any sort of instrument which might be so recorded as to cast a cloud upon our title; and in any event, to give them nothing in writing which we have not previously seen.

Conflicting interpretations of the settlement proposal and letters between opposing counsel were argued to the jury.

We find more than a scintilla of evidence was presented at trial from which the jury could conclude that Gilbert Kerlin acquired 7,500 acres of land for the benefit of the

Balli Grantors, which he did not share with them. Accordingly, we hold the evidence is legally sufficient to support the jury's answer to Jury Charge Question Number 14.

### b. Factual Sufficiency

■ The Kerlin Group argues generally that the evidence in the record is factually insufficient to support the jury's answer to Jury Charge Question Number 14. We note that the Kerlin Group has failed to cite any evidence from the record contrary to the jury finding on Jury Charge Question Number 14.

■ An appellant bears the burden of discussing its assertion of error and pointing the appellate court to the portions of the record that support its complaint. *Barham v. Turner Constr. Co.*, 803 S.W.2d 731, 740 (Tex.App.-Dallas 1990, writ denied). A court of appeals has no duty to search a voluminous record without guidance from appellant to determine whether an asserted error is valid. *Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex.App.-Houston [14th Dist.] 1995, no writ). Because the Kerlin Group has cited no evidence in support of its factual sufficiency challenge to the jury's answer to Jury Charge Question Number 14, we hold it is waived. *See id.* We overrule the Kerlin Group's tenth issue.

### 2. Waiver of Sufficiency Challenges

■ In an additional issue, the Kerlin Group contends the evidence is legally and factually insufficient to support the jury's findings on the Balli Claimants' conspiracy claims against Gilbert Kerlin. However, we are unable to discern any argument correlating with the issue set out. In accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and to the record. TEX.R.APP. P. 38.1(h). Because the issue raised is not adequately briefed, we will not address it. *See Smith*, 112 S.W.3d at 280.

■ In its eighth issue, the Kerlin Group also contends the evidence is legally insufficient to support the jury's finding of fraudulent concealment. The Kerlin Group did not support this contention with references to the record or citation of authority. Accordingly, we hold that the Kerlin Group waived this portion of its eighth issue. *See* TEX.R.APP. P. 38.1(h); *Smith*, 112 S.W.3d at 280.

### F. Election of Remedies

In an additional issue, the Kerlin Group contends the trial court erred by: (1) failing to require that the Balli Claimants elect theories of recovery, and (2) failing to modify, reform, and correct the judgment accordingly.

■ The election of remedies doctrine may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex.1996) (quoting *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850–52 (Tex.1980)). An election of remedies does not occur unless a party having two or more inconsistent remedies pursues one of them to the exclusion of the others. *Fina Supply v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex.1987) (citing *Bocanegra*, 605 S.W.2d at 851). The doctrine is designed to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong. *Id.* The doctrine is not favored, and its scope should not be extended. *Am. Sav. & Loan Ass'n of*

*Houston v. Musick,* 531 S.W.2d 581, 588 (Tex.1975).

■■■ The Kerlin Group argues that the election of remedies doctrine bars recovery of damages for unpaid royalty interests and recovery of damages for the sale of the surface rights to the 7,500 acres. However, each of these damages arise out of separate causes of action for separate wrongs. Accordingly, the election of remedies doctrine is not applicable as argued by the Kerlin Group. Therefore, we overrule this additional issue.

### G. *Additur of Damages*

In its eleventh issue, the Kerlin Group complains that the trial court added an additional amount of damages after it received the jury's answer to Jury Charge Question Number 14. The Kerlin Group asserts this is error because no question of damages was submitted in conjunction with Question Number 14.

In response, the Balli Claimants argue that the judgment of partial accounting against Kerlin for the wrongfully retained rentals was an order of disgorgement, not an additur. They assert that the issue of profit disgorgement by a breaching fiduciary does not present a fact question and is not an issue on which a jury question is required. Furthermore, the Balli Claimants point out that the leases executed by Kerlin for the 20,000 acres received in the *Havre* settlement are in evidence. The leases were admitted in connection with the Balli Claimants' request for accounting.

After the trial court received the jury's answers to the Jury Charge Questions, the Balli Claimants asked the court for an order of accounting, profit disgorgement, and imposition of a constructive trust. The trial court denied the motion for accounting and profit disgorgement, but determined, based on the jury's verdict, that

the Balli Claimants were entitled to a constructive trust on mineral interests in certain lands.

■■■ A constructive trust is an equitable remedy used to prevent unjust enrichment. *Teve Holdings, Ltd. v. Jackson,* 763 S.W.2d 905, 908 (Tex.App.-Houston [1st Dist.] 1988, no writ). Although a litigant has the right to a trial by jury in an equitable action, only ultimate issues of fact are submitted for jury determination. *State v. Tex. Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979). As a general rule, the jury does not determine the expediency, necessity, or propriety of equitable relief. *Burrow v. Arce,* 997 S.W.2d 229, 245 (Tex. 1999); *Tex. Pet Foods, Inc.,* 591 S.W.2d at 803; *Alamo Title Co. v. San Antonio Bar Ass'n,* 360 S.W.2d 814, 816 (Tex.Civ.App.-Waco 1962, writ ref'd n.r.e.). Consistent with the rule, whether a constructive trust should be imposed must be determined by a court based on the equity of the circumstances. *Burrow,* 997 S.W.2d at 245. Its scope and application, within some limitations, is generally left to the discretion of the court imposing it. *Wheeler v. Blacklands Prod. Credit Ass'n,* 627 S.W.2d 846, 849 (Tex.App.-Fort Worth 1982, no writ).

■■■ We conclude the trial court committed no error in the imposition of a constructive trust and the damages emerging out of the trust. As the trial court stated in its modified final judgment, the constructive trust was premised on the fact findings of the jury. We hold the constructive trust was not a post-verdict additur of damages. The Kerlin Group's eleventh issue is overruled.

### III. THE BALLI CLAIMANTS' ISSUES ON APPEAL

The Balli Claimants raise two issues on appeal. They complain of the trial court's refusal: (1) to order an accounting and

disgorgement of all profits and (2) to award prejudgment interest.

### A. *Accounting and Disgorgement of all Profits*

In their first issue, the Balli Claimants contend the trial court erred in refusing to issue an order for equitable accounting and disgorgement of all profits made as a result of Kerlin's breach of fiduciary duty. The Balli Claimants assert a claim of equity requiring a determination of what monies the Kerlin Group received from the 7,500 acres that Gilbert Kerlin took as trustee for the Balli Grantors but never shared. The Balli Claimants allege that the Kerlin Group received additional monies attributable to the 7,500 acres in the form of delay rentals and bonuses under various oil and gas and agricultural leases executed on the property.

■■■ An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action. *Michael v. Dyke,* 41 S.W.3d 746, 754 (Tex.App.-Corpus Christi 2001, no pet.); *compare T.F.W. Mgmt. v. Westwood Shores Prop. Owners Ass'n,* 79 S.W.3d 712, 717 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (treating an accounting as a cause of action based on alleged contractual obligations and principles of equity) *with Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 762 (Tex. App.-El Paso 1993, writ denied) (treating accounting as an equitable remedy for determining amount of damages). The equitable remedy of an accounting may apply under various circumstances. *T.F.W. Mgmt.,* 79 S.W.3d at 717; *Southwest Livestock & Trucking Co. v. Dooley,* 884 S.W.2d 805, 809 (Tex.App.-San Antonio 1994, writ denied). The decision to grant an accounting is within the discretion of the trial court. *Michael,* 41 S.W.3d at 754; *Dooley,* 884 S.W.2d at 810. In matters of equity, a trial court abuses its discretion if it rules: (1) arbitrarily, unreasonably, or without regard to guiding legal principles; or (2) without supporting evidence. *Welder v. Green,* 985 S.W.2d 170, 180 (Tex. App.-Corpus Christi 1998, pet. denied).

■■■ An equitable accounting is proper when the facts and accounts presented are so complex that adequate relief may not be provided for at law. *Hutchings,* 862 S.W.2d at 762 (citing *Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836, 838 (Tex.1967)); *Michael,* 41 S.W.3d at 754. When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting. *T.F.W. Mgmt.,* 79 S.W.3d at 718. Generally, an accounting is appropriate when there was a close a fiduciary relationship between the parties. *Richardson,* 419 S.W.2d at 838.

■■ The case at hand demonstrates the circumstances necessary to qualify for an equitable accounting. The trial court correctly determined that Kerlin, as executive interest holder, owed a fiduciary duty to the Balli Grantors. The jury found that Kerlin had breached that duty. However, regular discovery practices are inadequate to determine the amount of profit Kerlin received as a result of this breach; the Kerlin Group denies possessing the records necessary to account for profits through ordinary discovery. The Balli Claimants could not obtain adequate relief at law through use of other legal procedures. Under the standards thus established, we conclude that the trial court abused its discretion by denying the imposition of an accounting. We sustain the Balli Claimants' first issue.

### B. *Prejudgment Interest*

In their second issue, the Balli Claimants contend the trial court erred by refusing to award prejudgment interest on the $1,092,000 withheld by Gilbert Kerlin from the date of sale of the surface estate interests in Padre Island until the date the Balli Claimants filed suit.

Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins*, 962 S.W.2d at 528. There are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute. *Id.*

In *Johnson & Higgins v. Kenneco Energy*, the Supreme Court of Texas held that, "under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *Id.* at 531. The Balli Claimants assert that *Johnson & Higgins v. Kenneco Energy* should not apply to breach of fiduciary duty cases. In this case, they argue, the Kerlin Group was enriched by the breach of fiduciary duty from the day of the breach.

The Houston Fourteenth Court of Appeals recently addressed the issue of whether prejudgment interest should be calculated from the date a breach occurred, rather than under the standard set out in *Johnson & Higgins v. Kenneco Energy*. *Lee v. Lee*, 47 S.W.3d 767 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). The *Lee* court held that despite prior holdings that prejudgment interest be paid from the date of the breach in breach of fiduciary duty cases, the supreme court had declared in *Johnson & Higgins v. Kenneco Energy* that the standard announced in that case for the award of prejudgment interest applied to all cases not falling within the statutory guidelines for prejudgment interest. *Lee*, 47 S.W.3d at 800. The *Lee* court interpreted the language in *Johnson & Higgins v. Kenneco Energy* to impliedly overrule all contrary cases. *Id.* We agree with our sister court and hold that there is no recognized exception for the imposition of prejudgment interest in breach of fiduciary duty cases. We overrule the Balli Claimants' second issue.

### IV. Conclusion

We overrule all of the Kerlin Group's issues on appeal. We sustain the Balli Claimants' first issue and overrule their second issue.

We reverse that part of the trial court's judgment denying an equitable accounting and remand that issue to the trial court with instructions to order an equitable accounting. We affirm the remainder of the trial court's judgment.