NO. 07-08-0219-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C 

 JULY 8, 2009

______________________________


MIKE LEWIS AND GERI KINCANNON, APPELLANTS 

V.

XIUM CORPORATION AND GREG A. DOCKERY, APPELLEES

_________________________________

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 94,013-B; HONORABLE JOHN B. BOARD, JUDGE

_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


Â Â Â Â Â Â Â Â Â Â Appellants, Mike Lewis and Geri Kincannon, appeal from a judgment rendered in
favor of Appellees, Xium Corporation and Greg A. Dockery (Xium),


 during a bench trial of
Lewis and Kincannonâs action for breach of their investment contracts with Xium. Lewis
and Kincannon assert the trial court erred by: (1) failing to order an accounting; (2)
entering a directed verdict at the end of their case-in-chief; (3) denying their motion to
supplement their pleadings; (4) denying their motion for discovery sanctions; (5) denying
their motion for a modification of the Discovery Control Plan; (6) denying their post-trial
motion for sanctions; (7) granting Xiumâs untimely objections to discovery; (8) permitting
the admission of âroyalty summariesâ and amended âroyalty summariesâ into evidence; (9)
permitting Xium to use documents at trial not produced in response to Lewis and
Kincannonâs discovery requests; and (10) misapplying the rules of civil procedure to a
hearing on sanctions arising out of Xiumâs non-production of documents and abuse of the
discovery process. Finding that the trial court erred by not ordering an accounting, we
reverse the judgment of the trial court and remand for further proceedings in conformance
with this opinion. 
Background
Â Â Â Â Â Â Â Â Â Â In their first Amended Petition filed January 26, 2006, Lewis and Kincannon alleged
actions for violation(s) of the Texas Business Opportunity Act,


 Securities Act,


 Deceptive
Trade Practices-Consumer Protection Act,


 and they sought damages for fraud and 
breach of contract, as well as seeking to pierce the corporate veil between Xium and its
President, Dockery. Lewis and Kincannon alleged they invested money with Xium


 in
return for royalties from the sale of Xium products or other income, but received no money. 
The petition sought âan accounting of the expenditures, expenses and income of [Xium and
Dockery] involved in the marketing of Spilateral technology


 since the date of [Lewis and
Kincannonâs ] initial investment upon which royalties would be computed.â In addition,
Lewis and Kincannon sought recovery of interest and attorneyâs fees.



Â Â Â Â Â Â Â Â Â Â On July 21, 2006, Lewis and Kincannon filed traditional and âno-evidenceâ motions
for summary judgment. On August 22, 2006, Xium and Dockery responded. With their
response, they filed an affidavit by Dockery with attachments entitled âRoyalty
Summar[ies].â


 The record does not indicate whether the trial court ever ruled on Lewis
and Kincannonâs motion for summary judgment. 
Â Â Â Â Â Â Â Â Â Â I.Â Â Â Â Â Â Â Â PreTrial Pleadings
Â Â Â Â Â Â Â Â Â Â On July 24, 2007, the trial court filed its pretrial order requiring discovery (including
supplemental responses) to be completed by November 15, 2007, and pleadings to be
filed by December 14, 2007. The order also set a trial date of February 19, 2008. On
August 21, 2007, Lewis and Kincannon filed a motion to compel and for sanctions alleging
Xium had failed to properly respond to their first request for production of documents.


 On
October 18, 2007, Xium produced a second set of documents. 
Â Â Â Â Â Â Â Â Â Â On January 14, 2008, Xium filed an agreed motion to continue the trial date
because the partiesâ depositions had not been conducted due to scheduling conflicts. The
following day, the trial court denied that motion.
Â Â Â Â Â Â Â Â Â Â On February 1, 2008, Xium filed a motion for leave to file a âno evidenceâ motion for
summary judgment and, on February 4, 2008, filed a motion for leave to file a traditional
motion for summary judgment. Attached to the traditional motion for summary judgment
was Dockeryâs affidavit and the purported âRoyalty Summariesâ originally filed in August
2006 in response to Lewis and Kincannonâs traditional motion for summary judgment. On
February 15, 2008, Xium faxed an updated copy of the âRoyalty Summariesâ to Lewis and
Kincannon indicating they intended to use the summaries at trial on February 19.
Â Â Â Â Â Â Â Â Â Â On February 11, 2008, Xium filed a second agreed motion for a continuance
premised on the pending motions for summary judgment and they jointly sought to
continue the trial until March 24. On February 13, Lewis and Kincannon filed a motion to
strike Xiumâs special exceptions to their first amended petition and Xiumâs âno evidenceâ
and traditional motions for summary judgment. Lewis and Kincannon also filed for leave
to file a second amended petition and sought discovery sanctions under Rules 193.6 and
215 of the Texas Rules of Civil Procedure


 based on Xiumâs failure to âfully and
completelyâ respond to Lewis and Kincannonâs request for production of documents. In
support of their motion for discovery sanctions, Lewis and Kincannon asserted Xium wholly
failed to respond to numerous, specific document requests or produced incomplete
documents or documents for miscellaneous time periods. Lewis and Kincannon also
sought a modification of the discovery plan pursuant to Rule 190.5.
Â Â Â Â Â Â Â Â Â Â On February 13, 2008, the trial court denied the second agreed motion for 
continuance. 
Â 

Â Â Â Â Â Â Â Â Â Â II.Â Â Â Â Â Â Â Pretrial Hearing
Â Â Â Â Â Â Â Â Â Â Prior to trial on February 19, the trial court held a hearing and denied Lewis and
Kincannonâs motions. The trial court denied a third agreed motion for a continuance and
Xium withdrew its motions for summary judgment. 
Â Â Â Â Â Â Â Â Â Â The trial court permitted Lewis and Kincannon to put on a bill of exception pertaining
to the trial courtâs denial of their discovery motions. In support of their bill, Lewis and
Kincannon called Mark Kile, a certified public accountant, as a witness who had reviewed
Lewis and Kincannonâs request for production of documents and Xiumâs response. Kileâs
review of Xiumâs response served October 18, 2007, was completed December 22, 2007. 
Â Â Â Â Â Â Â Â Â Â In response to Lewis and Kincannonâs request for production, Kile testified Xium
produced some board minutes but the minutes were incomplete. He testified that Xium
produced no committee minutes, retirement plan information, or shareholder stock ledgers. 
Although Xium produced general ledger documents spanning years 1999 through 2005,
he testified the ledgers were in batch format, only a few miscellaneous months were
included in the postings, the âtotalâ column was not included in the documents produced,
and there was no detail of any individual transactions. In his opinion, the general ledger
documents were incomplete, inadequate, and not representative of Xiumâs complete
financial history. Further, he testified the production of cash disbursement records was
incomplete; only one accounts receivable aging report was produced; the accounts
payable information was incomplete and meaningless; some sales reports were produced
for two years;


 customer contact information was incomplete; there were no payroll
ledgers, quarterly payroll reports, salary agreements, or employee contracts,


 no
employee benefit or compensation documents; corporate investment documents, property
ownership documents; no loan, guarantee, outstanding commitment or asset pledge
documents; corporate income tax returns; Form 1099's; interim financial statements;



income statements; detailed inventory records; depreciation schedules; invoice copies. 
Although some bank statements were produced, only the front page of the statements was
produced. 
Â Â Â Â Â Â Â Â Â Â Kile testified the âRoyalty Summaries,â attached to Xiumâs summary judgment
pleadings, were encompassed by a specific request for production by Lewis and
Kincannon but were not produced. He indicated that he had no means to verify the
calculations in the âRoyalty Summariesâ because Xium had not produced the underlying
sales and inventory information or documents. Based upon his review of the documents
produced by Xium, he opined their entire production was âreally meaningless . . . [i]t was
like either somebody . . . incompetent put them together or they were intentionally trying
to deceive the plaintiffs, but they were unresponsive to the request . . . [u]seless, just a pile
of paper, general ledgers and tax returns not provided, or the underlying documents,
meaningless.â Thereafter, without granting any further relief, the trial court commenced
the bench trial. 
Â Â Â Â Â Â Â Â Â Â III.Â Â Â Â Â Â Bench Trial
Â Â Â Â Â Â Â Â Â Â Kincannon was the first witness. He had known Dockery for approximately twenty
years


 when Dockery approached him about investing in his new corporation, Xium. 
Dockery represented Kincannon would triple a $10,000 investment in Xium in the first year.
Â Â Â Â Â Â Â Â Â Â On July 29, 1999, Kincannon agreed to invest $10,000 and entered into a Letter
Agreement. In return for his investment, Kincannon was promised a royalty for each
XM2000 unit sold by Xium not to exceed $30,000 or three hundred percent of his initial
cash investment.


 The Agreement further provided, in pertinent part, as follows:
Xium will keep an accurate account of the product manufactured and sold,
and shall render a statement of such business, in writing to you, within thirty
(30) days after the end of each calendar quarter, and shall, concurrently, pay
to you the full amount of royalty accrued during the calendar quarter. 
Â 
Â Â Â Â Â Â Â Â Â Â At the end of the first year, Kincannon met with Dockery who represented that
Kincannon had earned $30,000 in royalties during the first year. Dockery then displayed
numerous kinds of wireless technology manufactured by Xium. He told Kincannon that he
could apply Kincannonâs $30,000 in royalty earnings toward ownership of a portion of
Xiumâs business. Dockery showed Kincannon a chart entitled âStatistics & Projected
Market Penetration.â For each of twenty Xium products, the chart showed the projected
units to be sold and the corresponding âpay zoneâ for an investor depending on the amount
of their investment. The chart indicated that with a $25,000 investment, Kincannon would
realize $590,559 from Xiumâs sales. Dockery represented this amount was the minimum
amount Kincannon would earn if he invested. In return for his investment of $30,000,
Kincannon understood he would receive three percent of Xiumâs sales. Kincannon agreed
to purchase the three percent interest.
Â Â Â Â Â Â Â Â Â Â On August 11, 2000, Kincannon also executed a second Letter Agreement and
contributed an additional $12,500 in return for a âroyalty of $.10 per hardware unit sold
using âSpilateralâ technology.â This second Agreement contained the same accounting
provision contained in the first Agreement.
Â Â Â Â Â Â Â Â Â Â In February 2001, after obtaining $50,000 from Lewis, Dockery changed his cell
phone number and was unavailable. Although Kincannon attempted to obtain more
information about his investment, Dockery ceased all communication with him. He was
told Dockery was not in his office when Kincannon visited Xiumâs offices


 and Dockery did
not return his calls. Kincannon never received any accounting or royalties. Kincannon
testified that he would have never invested in Xium without the assurance of accurate
accountings contained in the Letter Agreements. At the conclusion of his testimony,
Kincannon moved for a trial amendment under Rule 66 to assert a claim for recision. 
Following a hearing, the trial court allowed the amendment seeking an alternative measure
of damages in addition to royalties. 
Â Â Â Â Â Â Â Â Â Â Lewis was the next witness. Lewis testified that he had known Dockery for three
years when he invested in Xium. On July 27, 2000, he and his wife, Mary Lewis, entered
into a Letter Agreement with Xium whereby they contributed $25,000 to Xium in return for
a âroyalty of $.20 per hardware unit sold using Spilateral technology.â And, on February
28, 2001, they entered into a second Letter Agreement whereby they contributed an
additional $50,000 in return for a royalty of $.045 per hardware unit sold using Spilateral
technology. Both Letter Agreements contained the same accounting provision as the
Kincannon agreements. 
Â Â Â Â Â Â Â Â Â Â Prior to investing, Lewis was also given the same chart as Kincannon entitled
âStatistics & Projected Market Penetration.â He was also told that the increase in the value
of his investment represented on the chart was a âlow figureââ âwhat his minimum payout
would be based on his royalties.â The chart indicated that, based upon an investment of
$75,000, his payout would be $2,140,776. He testified Dockery represented that the
chartâs figures were low and that the minimal amount he would make on his investment
would be $2.14 million. Neither did Lewis receive any accounting or royalties. He testified
that, if he had known that Dockery was not going to give him the accounting to which he
was entitled, he would not have invested the money. He also testified he could not say
what royalty was due and owing to him because he had no information what that amount
would be. 
Â Â Â Â Â Â Â Â Â Â Lewis and Kincannon rested their case, Xium moved for a directed verdict on all
causes of action, and the trial court granted that motion stating, in pertinent part, as
follows:
With regard to the breach of contract claims, I think thereâs some evidence
to support a finding that the contract was breached by failure to give
quarterly accountings and to pay quarterly royalties, and there is some
evidence with respect to recision damages which would be the amounts paid
by the Plaintiffs. But the Plaintiffs have the burden of proof to prove that an
adequate remedy is not available at law, and thereâs simply no evidence to
support such a finding. I have no evidence what damages, if any, was
caused by the failure to give quarterly reports. I have no evidence to show
what damage, if any, was caused by the failure to pay royalties. Thereâs no
evidence that any royalty was even due. And so based on that, I find that
with regard to [Lewis and Kincannon] meeting their burden of proof on the
contract â breach of contract allegations, they have failed to do so and [I] will
grant judgment to the Defendant.
Â 
Â Â Â Â Â Â Â Â Â Â On February 28, 2008, Lewis and Kincannon filed a motion for sanctions and
directed verdict or, alternatively, motion for a new trial. The trial court denied Lewis and
Kincannonâs motion and this appeal followed.

Discussion
Â Â Â Â Â Â Â Â Â Â Lewis and Kincannonâs points of error can be distilled to three issues. That is, (1)
whether the trial court erred by failing to order an accounting at the conclusion of their
evidence; (2) whether the trial court erred by directing a verdict in Xiumâs favor at the
conclusion of their evidence; and (3) whether, in lieu of ordering further discovery or an
accounting from Xium, the trial court erred by failing to sanction Xium for abusing the
discovery process. 
Â Â Â Â Â Â Â Â Â Â Xium asserts that Lewis and Kincannon were not entitled to an accounting because
they did not request one in either their original or first amended petitions. Xium asserts the
âRoyalty Summariesâ were an accounting. Xium also asserts a directed verdict was proper
because Lewis and Kincannon failed to establish any damages and that the only evidence
of any damages owing to Lewis and Kincannon, the âRoyalty Summaries,â were excluded
at the prompting of Lewis and Kincannon . Finally, Xium cross moves for sanctions under
Rule 45 of the Texas Rules of Appellate Procedure asserting that Lewis and Kincannonâs
appeal is âfrivolous.â
Â Â Â Â Â Â Â Â Â Â I.Â Â Â Â Â Â Â Â Standard of Review
Â Â Â Â Â Â Â Â Â Â A directed verdict is proper when the evidence conclusively establishes the right of
the movant to judgment or negates the right of the opponent or when the evidence is
insufficient to raise a material fact issue. Prudential Ins. Co. of America v. Financial
Review Services, Inc., 29 S.W.3d 74, 77 (Tex. 2000). See Cotten v. Weatherford
Bancshares, Inc., 187 S.W.3d 687, 696 (Tex.App.âFort Worth 2006, pet. denied). If the
question to be decided is whether the losing party at trial raised a material fact issue, we
consider all the evidence in a light most favorable to the party against whom the verdict
was instructed and disregard all the contrary evidence and inferences; we give the losing
party the benefit of all reasonable inferences created by the evidence. Coastal Transport
Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234 (Tex. 2004). If we determine
that any conflicting evidence of probative value raises a material fact issue on any theory
of recovery, then the directed verdict is improper because such an issue is for the finder
of fact to resolve. Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).
Â Â Â Â Â Â Â Â Â Â II.Â Â Â Â Â Â Â Accounting
Â Â Â Â Â Â Â Â Â Â An accounting may be a particular remedy sought in conjunction with another cause
of action or it may be a suit in equity. Michael v. Dyke, 41 S.w.3d 746, 754
(Tex.App.âCorpus Christi 2001, no pet.). See Sauceda v. Kerlin, 164 S.W.3d 892, 928
(Tex.App.âCorpus Christi 2005), reversed on other grounds, 263 S.W.3d 920 (Tex. 2008). 
In a suit for an accounting, the general rule requires that the right to an accounting must
first be determined and, if found, reference for an account should be ordered.


 Advertising
and Policy Committee of the Avis Rent A Car System v. Avis Rent A Car System, 780
S.W.2d 391, 400 (Tex.App.âHouston [14th Dist.] 1989), vacated and remâd due to
settlement, 796 S.W.2d 707 (Tex. 1990); Ferguson v. Ferguson, 327 S.W.2d 787, 789
(Tex.Civ.App.âFort Worth 1959), revâd on other grounds, 161 Tex. 184, 338 S.W.2d 945
(1960). Where relief is justified, a trial courtâs failure to order an accounting is cause for
reversal. Southwest Livestock & Trucking Co. v. Dooley, 884 S.W.2d 805, 811
(Tex.App.âSan Antonio 1994, writ denied). 
Â Â Â Â Â Â Â Â Â Â Here, an accounting remedy was sought in connection with Lewis and Kincannonâs
claim for breach of their investment contracts. Lewis and Kincannon testified they did not
receive any return under their contracts. Their contracts contained an express provision
requiring periodic accounting by Xium and Xium provided no accounting. Thus, Lewis and
Kincannonâs evidence at trial established Xium had a contractual duty to provide Lewis and
Kincannon with an accounting and Xium breached its duty. 
Â Â Â Â Â Â Â Â Â Â An action for accounting may also be founded in equity; T.R.W. Management, Inc.
v. Westwood Shores Property Owners Assân, 79 S.W.3d 712, 717 (Tex.App.âHouston [14th
Dist.] 2002, pet. denied); Southwest Livestock, 884 S.W.2d at 810, where the decision
whether to grant the accounting is within the sound discretion of the trial court.


 Michael,
41 S.W.3d at 754; Southwest Livestock, 884 S.W.2d at 810. Such a remedy is proper
when the facts and accounts presented are so complex that adequate relief may not be
obtained at law. Hutchings v. Chevron U.S.A., 862 S.W.2d 752, 762 (Tex.App.âEl Paso
1993, writ denied) (citing Richardson v. First Natâl Life Ins. Co., 419 S.W.2d 836, 838 (Tex.
1967). See also Sauceda, 164 S.W.3d at 928; T.R.W., 79 S.W.3d at 717-718. When a
party can obtain adequate relief at law through the use of standard discovery procedures,
such as requests for production and interrogatories, a trial court does not err in not ordering
an accounting. T.F.W., 79 S.W.3d at 718. 
Â Â Â Â Â Â Â Â Â Â Here, regular discovery practices proved inadequate to determine the amount of
royalties, if any, that remained unpaid. Despite Lewis and Kincannonâs detailed request
for production of documents and subsequent motion to compel, the uncontroverted
testimony of Lewis and Kincannonâs accountant, Kile, showed Xiumâs production and
supplemental production were âreally meaninglessâ or âuseless.â Few, if any, of the
requested documents were produced to Lewis and Kincannon, and those documents
produced were either incomplete for the time period requested or incomplete in
themselves. In addition, Xium objected to each investor request asserting the information
sought was âconfidential and proprietary.â Under the circumstances, normal discovery
procedures were inadequate. 
Â Â Â Â Â Â Â Â Â Â Xium asserts Lewis and Kincannon were not entitled to the accounting remedy
because they did not request an accounting in their original or first amended petitions. 
Xiumâs argument is baseless. In their first amended petition, Lewis and Kincannon sought
âan accounting of the expenditures, expenses and income of [Xium and Dockery] involved
in the marketing of âSpilateralâ technology since the date of [Lewis and Kincannonâs] initial
investment upon which royalties would be computed.â Lewis and Kincannonâs first
amended petition sufficiently pled an action for accounting; see Bly v. Harvey, 397 S.W.2d
893, 895 (Tex.Civ.App.âTexarkana 1965, writ refâd n.r.e.), and damages. T-P Inv. Corp.
v. Winter, 400 S.W.2d 957, 959 (Tex.Civ.App.âWaco 1966, writ dismâd). 
Â Â Â Â Â Â Â Â Â Â Xium next asserts that its âRoyalty Summariesâ were an accounting. An accounting
is a âsystem of recording and summarizing business and financial transactions in books
and analyzing, verifying and reporting the results.â New Jersey Bank (N.A.) V. Knuckley,
637 S.W.2d 920, 921 (Tex. 1982).


 Dockeryâs ex parte affidavit and attached âRoyalty
Summariesâ were hearsay and, as such, wholly incompetent and without probative force.


 
See Sammons Enterprises, Inc. v. Manley, 540 S.W.2d 751, 757 (Tex.Civ.App.âTexarkana
1976, writ refâd n.r.e.); Ward v. National Benev. Soc., 155 S.W.2d 994, 996
(Tex.Civ.App.âGalveston 1941, no writ). As such, the âRoyalty Summariesâ were not an
accounting.
Â Â Â Â Â Â Â Â Â Â Xiumâs assertion that Lewis and Kincannon failed to prove their damages, and the
trial courtâs judgment, assumes the proposition to be proven through an accounting, i.e.,
whether Lewis and Kincannon are entitled to any return. In the absence of adequate
discovery or a verified accounting, Lewis and Kincannon were unable to prove their
damages; see generally Winter, 400 S.W.2d at 959 (â[t]he very nature of the prayer for
accounting [makes] it unnecessary for plaintiff to allege a certain and specific amount of
damages or sum dueâ), because Xium controls all the necessary information. Lewis and
Kincannonâs evidence shows that, based upon their long-standing personal relationships,
Dockery proposed the sale of the royalties while representing that Lewis and Kincannon
would reap substantial profits, promised accountings, supervised the sale of the
technology, collected the money, and made all the expenditures. Lewis and Kincannon,
on the other hand, were more akin to silent partners. They had no voice in the enterprise
and knew nothing of the financial status or details of Xiumâs Spilateral business enterprise. 
As such, absent adequate disclosure or an accounting, Xium held, and continues to hold,
the exclusive power to establish whether there were no profits from the sale of its Spilateral
technology.
Â Â Â Â Â Â Â Â Â Â Â We find the directed verdict was improper because Lewis and Kincannon produced
evidence Xium had a contractual duty to provide an accounting and breached that duty. 
Moreover, regular discovery practices have proven inadequate. Despite their submission
of detailed document requests, Lewis and Kincannon have yet to obtain sufficient
information to determine whether there were profits from the sale of Xiumâs Spilateral
technology and royalties due. Under the standards thus established, we conclude the trial
court erred and/or abused its discretion by denying the imposition of an accounting. See
Sauceda, 164 S.W.3d at 928. 
Â Â Â Â Â Â Â Â Â Â We sustain Lewis and Kincannonâs first and second points of error. The remaining
points of error are pretermitted; see Tex. R. App. P. 47.1, and Xiumâs cross-point for
sanctions is denied. 
CONCLUSION
Â Â Â Â Â Â Â Â Â Â The trial courtâs judgment is reversed and remanded for further proceedings
consistent with this opinion. 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â 

Â Â Â Â Â Â Â 



E>Tex.App.BDallas
1987, writ ref=d n.r.e.). 

Zouzalik and Drake present
their evidence of duress through their summary judgment affidavits.  They aver that Yang as agent for WestCal threatened to lock the building if Zouzalik and Drake did not pay rent of $31,000 for July 1
through 15.Â  On June 25, they signed a
note for $31,000 to pay the rent because, A[t]o the best of
[their] knowledge@ they knew of no other means to prevent
the lock-out.Â  Access to the cotton was
required, they add, as revenue from its delivery was necessary for World WideÂs continued business operation.

According to the
lease agreement, a Adefault@ would occur if
World Wide failed to pay a rental installment on the due date and the
obligation remained unpaid for five days thereafter.Â  If a default occurred, the lease agreement gave the landlord
an option.Â  It could terminate the lease
by written notice to World Wide.Â  In that
event, the lease automatically terminated on the date specified by the
notice.Â  Or it could terminate World Wide=s right of possession of the
leasehold without terminating the lease, reenter, take possession of the
property, operate it, and collect Athe rents, issues, and profits therefrom
all for the account of [World Wide].@

Zouzalik and Drake do not contend WestCal lacked authority to enforce the lease agreement=s covenant to pay rent by exercising
one of the options granted by the agreement.Â 
Further, whether relying on automatic termination of the lease or a
right of reentry, there is no evidence that WestCal
could not on default have lawfully locked the property, including the building
containing the cotton of World Wide.Â  The
summary judgment evidence thus does not present an issue of fact that Yang
threatened an act for which no legal right existed.

Review of applicable statutory
provisions does not suggest a different conclusion.Â  The Property Code allows a commercial
landlord to change the door locks of a tenant Âwho is delinquent in paying at
least part of the rent.ÂÂ  Tex. Prop. Code
Ann. ' 93.002(c) (Vernon 2007).Â  Therefore, if World Wide became delinquent
for some or all of the July rent, WestCal had the
legal right to exclude World Wide from the premises by changing the door locks
in conformity with the statute.[1]Â  And it is the threat to lock World Wide out
for non-payment of rent that Zouzalik and Drake urge
as the basis for their duress defense.Â 
Since exclusion of a tenant from a leasehold by
changing door locks, according to the requirements of statute, is the legal
right of a commercial landlord, Yang=s threat of a lock-out was not on its face unlawful.

Because WestCal
possessed a legal right by the lease agreement or statute to lock World Wide
out, and the summary judgment record creates no fact issue of the converse,
summary judgment for Wells Fargo was proper.

Conclusion

Finding the summary judgment evidence
does not create an issue of fact on each element of duress,
we overrule appellants= issue and affirm the judgment of the
trial court.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  James
T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Â Â Â Â Â Â Â Â Â Â Â  








Â 











[1]Â 
The Property Code further provides:

If a landlord or a landlord=s agent changes
the door lock of a tenant who is delinquent in paying rent, the landlord or
agent must place a written notice on the tenant=s front door
stating the name and the address or telephone number of the individual or
company from which the new key may be obtained.Â 
The new key is required to be provided only during the tenant=s regular business
hours and only if the tenant pays the delinquent rent.

Tex. Prop. Code Ann. ' 93.002(f) (Vernon
2007).